IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

AMY LYNN REDD LOLLEY,     )
        )
    Petitioner,     )
        )
   v.     )     **Civil No.  1:07cv648-WHA**
        )     **Crim. No.  1:06cr170-WHA**
UNITED STATES OF AMERICA,     )
        )
    Respondent.     )

## UNITED STATES RESPONSE TO DEFENDANT'S §2255 MOTION

COMES NOW the United States of America, by and through its attorney, Leura G.

Canary, United States Attorney, and, in compliance with this Court's order, responds to

Defendant/Movant Amy Lynn Redd Lolley's Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, Or Correct Sentence, as follows:

### I.  PROCEDURAL HISTORY AND RELEVANT FACTS

On July 11, 2006, a grand jury for the Middle District of Alabama returned a four-count

indictment against Michael Wayne Catrett, Paula Seretha Catrett, Dale Arnold Williams, Trinity

Amanda Roberts, Renata Lynn Myers Wallace, Linda Schaller Cantelli, Carol Ann Michiles and

the Defendant/Movant, Amy Lynn Redd Lolley (Lolley).  See Exhibit A, the indictment.  The

indictment was superseded on August 15, 2006 and again on September 7, 2006.  See Exhibit B

and C, the superseding indictments.  Lolley was only charged in Count One of the Indictment,

which charged that from in or about 2003 through on about the 31st day of May, 2006, in Coffee

County, within the Middle District of Alabama, the defendants, Michael Wayne Catrett, Paula

Seretha Catrett, Dale Arnold Williams, Trinity Amanda Roberts, Renata Lynn Myers Wallace,

Linda Schaller Cantelli, Carol Ann Michiles,  Amy Lynn Redd Lolley , Roy Dale Wallace, Jessica Lumanai Brumaghim, and Sonya Michelle Pittman, did knowingly, intentionally, and unlawfully conspire and agree with each other and with others both known and unknown to the Grand Jury to knowingly, intentionally, and unlawfully manufacture, possess with the intent to distribute and distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).  See Exhibit C.

On January 4, 2007, Lolley entered into a plea agreement with the United States.  See Exhibit D, a copy of the plea agreement.  The plea agreement, signed by Lolley, stated, "Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding.  This waiver does not include the right to appeal on the grounds of ineffective assistance of counsel and prosecutorial misconduct."  Exhibit D, p. 6.  The plea agreement concluded with a statement that Lolley understood the plea agreement and that the plea agreement correctly stated the representations that have been made to Lolley.  Id. at 12.

The Court conducted Lolley's plea hearing on January 4, 2007.  See, Exhibit E, transcript of plea hearing.   At the outset of the hearing, Lolley was placed under oath.  Exhibit E at 2. Lolley then consented to have her plea taken by a United States Magistrate Judge.  Id. at 3. Further, during the plea hearing, the Court questioned the defendant regarding the collateral attack waiver saying:

Court:        Miss Lolley, under the terms of this plea agreement you are giving up your

right to appeal any sentence imposed on you with certain exceptions.

2

> Those exceptions are ineffective assistance of counsel, prosecutorial
>
> misconduct, or in the event that the Government decides to appeal, you
>
> would then have the right to appeal.  But other than those three instances
>
> you will not have the right to appeal or otherwise attack any sentence
>
> imposed on you.  Do you understand that?"

Lolley:          Yes, sir.

Id. at 7.

The United States Probation Office prepared a presentence investigation report (PSI).

The report related that upon executing a search warrant at Michael and Paula Catrett's

compound, agents found an operating methamphetamine laboratory and seven firearm, with two

of the firearms found in the operating methamphetamine laboratory.  PSI ¶ 9.  Another pistol was

found in a Chevrolet Corsica on the property and four firearms were located inside of a Ford

Taurus on the property.  PSI at ¶ 9.  The report further attributed two points to Lolley's base

offense level pursuant to U.S.S.G. § 2D1.1(b)(1).  PSI at ¶ 17.  Lolley objected to the inclusion of

the two point enhancement for possession of the firearms.  See Exhibit F, sentencing hearing

transcript at 3.

Lolley's sentencing hearing was held on April 17, 2007.  Exhibit F.  As stated above,

Lolley initially objected to the inclusion of the two-point enhancement.  However, at the

sentencing hearing, she withdrew such objection.  Exhibit F at 3.  When the court asked if she

maintained the objection, Lolley's attorney stated, "We would love to maintain it, but we're not

going to.  We have reviewed the law.  We don't like that; but like you heard before, we don't

believe that we can fight that.  The law seems to be clear that she has to bear those two points.

So we hereby withdraw our objection on it." Id. at 3.  The court denied the objection as moot, but added that "it would have been denied under the law if you had maintained it."  Id. at 3.

The Court found that Lolley's final offense level was 21, which, when combined with a criminal history category of I, resulted in a guideline imprisonment range of 37 months to 46 months.  Id. at 3.   The government filed a motion for downward departure pursuant to U.S.S.G. § 5K1.1.  Id. at 4.  The court granted such motion and reduced Lolley's offense level to a level 17, which combined with a criminal history category of I resulted in a guideline range of 24 months to 30 months imprisonment.  Id. at 4.  After hearing from several character witnesses, the court sentenced Lolley to term of imprisonment of 24 months.  Id. at 16.  Judgment was entered in Lolley's case on April 17, 2007.

Lolley filed this Motion to Vacate, Set Aside or Correct Sentence on July 17, 2007.  On August 10, 2007, this Court entered an order directing the United States to respond to Lolley's claims.  The Government's response deadline was continued to no later than November 12, 2007. The United States now files this response to the § 2255 motion.

## II.  CLAIM RAISED IN THE § 2255 MOTION

Lolley raises only one claim in her § 2255 motion, to wit: that the Court misapplied the two-point enhancement due to the presence of firearms pursuant to U.S.S.G. § 2D1.1(b).

## III.  RESPONSE TO CLAIMS FOR RELIEF

**A.**     **Lolley Has Met The One-Year Statute Of Limitations Deadline For The Filing of Claims Under 28 U.S.C. § 2255**.

The United States notes at the outset that Lolley has filed her motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time within which

4

to file a motion under the rule.  The applicable provision requires that a movant file her § 2255 motion within one year from "the date on which the judgment of conviction became final." 28 U.S.C. § 2255(1).

The judgment against Lolley was entered on April 17, 2007.  She did not appeal her conviction or sentence to the Eleventh Circuit Court of Appeals.  Thus, her sentence became final when the time for filing an appeal to the Eleventh Circuit expired.  Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the Supreme Court expires.  See Kaufman v. United States, 282 F.3d 1336, 1337-39 (11th Cir.2002).  Likewise, a judgment of conviction becomes final for someone who does not appeal when the time for seeking that appeal expires.  Lolley had ten days from the April 17, 2007 entry of judgment by this Court to seek review by the Eleventh Circuit; her judgment of sentence, therefore, became final on April 27, 2007.  Therefore, under § 2255, Lolley had until April 28, 2008, the first business day occurring after April 27, 2008, to file her motion.  Her filing of this § 2255 motion on July 17, 2007 is within one year, and her motion is therefore timely.

**B.**     **Lolley's Petition Is Barred Because She Waived Her Right to Seek Relief Under 28 U.S.C. § 2255 When She Entered Her Guilty Plea.**

The Eleventh Circuit views Lolley's waiver of her right to seek relief under § 2255 as a contract between the United States and a criminal defendant.  The Court has stated that [A]mong the considerations that a defendant may offer as part of such a contract is waiver of her right to appeal, provided that the waiver is made knowingly and voluntarily. See United States v.

Bushert, 997 F.2d 1343, 1350 (11th Cir.1993). In this case, [the appellant's] waiver was clearly

knowing and voluntary. The magistrate judge specifically questioned Lolley regarding her

waiver of her right to appeal. See United States v. Buchanan, 131 F.3d 1005, 1008 (11th

Cir.1997). The plea agreement is therefore enforceable and would appear to bar this appeal.

United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999).

The Eleventh Circuit has also stated that "a waiver of the right to seek federal habeas

review must be 'an intentional relinquishment or abandonment of a known right,' the right to

federal habeas review." Allen v. Thomas,161 F.3d 667, 670 (11th Cir. 1998). The record

demonstrates that the Court ascertained that Lolley's assent to the terms of her plea agreement

was knowing and voluntary. Exhibit D at 7. Lolley's § 2255 motion is thus procedurally barred

from review by this Court.

**C.     Ellis' Claims Are Procedurally Defaulted And Not Properly Considered
In This § 2255 Proceeding Because They Could Have Been Raised On Direct
Appeal, But Were Not, And Ellis Has Failed To Demonstrate Cause And
Prejudice To Overcome These Defaults.**

The legal issue raised by Lolley in her § 2255 motion is barred from this Court's review

because it could have been, but was not, raised on direct appeal. Because Lolley did not raise

this claim on direct appeal, however, it is barred in this collateral proceeding, unless she can

show cause and prejudice to overcome the procedural bar. A motion under § 2255 cannot be

used as a substitute for appeal, Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998), and

claims not raised on direct appeal that could have been are generally barred from review in

§ 2255 proceedings, McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001). In Mills v.

United States, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly summarized the law

concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or
> sentence must be advanced on direct appeal or else it will be considered
> procedurally barred in a [Section] 2255 proceeding....  A ground of error is usually
> "available" on direct appeal when its merits can be reviewed without further
> factual development....  When a defendant fails to pursue an available claim on
> direct appeal, it will not be considered in a motion for [Section] 2255 relief unless
> he can establish  cause for the default and actual prejudice resulting from the
> alleged error....  Alternatively, under the fundamental miscarriage of justice
> exception, "in an extraordinary case, where a constitutional violation has probably
> resulted in the conviction of one who is actually innocent, a federal habeas court
> may grant the writ even in the absence of a showing of cause for the procedural
> default....

Id. at 1055-56 (internal citations omitted).  See also McCoy v. United States, 266 F.3d at 1258

("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish

cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of

demonstrating cause and prejudice or a miscarriage of justice is on the movant.  See, e.g.,

Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally

defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if

the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually

innocent[.]' ").

Lolley has offered nothing to this Court to support a cause and prejudice or miscarriage of

justice argument to overcome her procedural defaults.   Therefore, her claims should be dismissed on procedural grounds.

**D.**     **Lolley's Legal Claim Is Without Merit.**

In the event this Court does not apply the procedural bar due to Lolley's waiver of her right to file a § 2255 motion, or her failure to raise her claims on direct appeal, the United States addresses her claim of legal error in her sentence.  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations." Stephens v. United States, 14 F.Supp.2d 1322, 1334 (N.D. Ga. 1998), quoting United States v. Guerra, 588 F.2d 519, 520-21 (5th Cir.1979).  "[I]n this circuit, as well as in the Supreme Court, when a § 2255 petitioner sets out detailed factual allegations ... the petitioner is entitled to a hearing unless the motion and the files on record conclusively show the petitioner is entitled to no relief.... Typically, this circuit has found some form of corroboration to a petitioner's allegations before requiring a hearing." Potts v. Zant, 638 F.2d 727, 751 (5th Cir. 1981)(citations omitted).[1] Because Lolley's motion and the record offer no factual basis or proof – and certainly no corroboration of her claim – necessary to establish her claim, it should be dismissed.

**E.**     **The Court Correctly Imposed a Two-Point Enhancement for the Presence of Weapons**

Lolley claims that the two-point enhancement based on the firearms should be removed because she had no involvement with the firearms.  Exhibit G, Lolley's Supplement to Form 28 U.S.C. 2255.  An adjustment under U.S.S.G. § 2D1.1(b)(1) should be applied if the weapon was

---

[1]   In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981.

present, unless it is clearly improbable that the weapon was connected with the offense. United States v. Hansley, 54 F.3d 7009 (11th Cir. 1995). Moreover, a co-conspirator's possession of a firearm will support enhancement of another co-conspirator's offense level if (1) the possessor was charged as a co-conspirator; (2) the co-conspirator was found to have possessed the firearm in furtherance of the conspiracy; and (3) the defendant was a member of the conspiracy at the time of the firearm possession. United States v. Pessefall, 27 F.3d 511 (11th Cir. 1994). In United States v. Gallo, 195 F.3d 1278 (11th Cir. 1999), the court added another component. The court held that in order for a defendant to receive the enhancement the co-conspirator's possession of the firearm must have been reasonably foreseeable to the defendant. Id.

On May 22, 2006, agents executed a search warrant at the Catrett compound. PSI ¶ 9. During the search, agents found an active methamphetamine laboratory, seven firearms, several sets of scales, glassware, and other evidence indicative of methamphetamine manufacturing. PSI ¶ 9. These firearms were found throughout the compound including in the operating methamphetamine laboratory. PSI ¶ 9. During the plea hearing, Lolley admitted to purchasing pills that would be used by her and her co-conspirators to manufacture methamphetamine. Exhibit E at 10. Lolley was manufacturing methamphetamine at the Catrett compound and guns were located throughout the compound. To say that it was not "reasonably foreseeable" that her co-conspirators were in possession of firearms is disingenuous at best. Further, Lolley is not contending that she had no knowledge of the guns or that the presence of the guns was reasonably unforeseeable. She is simply asserting that the firearms were not hers and she had no "involvement with the guns." Thus, because the gun was present and because it is not clearly improbable that the weapon was connected with the offense, the firearm enhancement should

have been applied.

Further, Lolley pled guilty to being a member of a conspiracy.  The objective of the conspiracy was to manufacture and distribute methamphetamine.  Because Lolley was a member of the conspiracy, another co-conspirator was found to possess a firearm in furtherance of the conspiracy, Lolley was a member of the conspiracy at the time of the co-conspirator's possession of the firearm and the co-conspirator's possession was reasonably foreseeable[2], the district court did not err in attributing the two-point enhancement to Lolley.

### V.  CONCLUSION

For the above reasons, Defendant/Movant Amy Lynn Redd Lolley has failed to demonstrate that she is entitled to any immediate relief from this Court and her § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this 9th day of November, 2007.

/s/ Clark Morris
CLARK MORRIS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
clark.morris@usdoj.gov

---

[2]Lolley assisted Michael Catrett in the manufacture of methamphetamine.  PSI ¶ 10. Moreover, she admitted during her factual basis that she purchased pills necessary for the manufacture of methamphetamine and used those pills to manufacture methamphetamine. Exhibit E at 10.

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| AMY LYNN REDD LOLLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No.  1:07cv648-WHA |
| | ) | Crim. No.  1:06cr170-WHA |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant: Amy Lynn Redd Lolley Prisoner No. 12001-002, FPC Alderson, Glen Ray Road, Box A, Alderson, West Virginia, 24910.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Clark Morris
CLARK MORRIS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
clark.morris@usdoj.gov

11

# Exhibit A

FILED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JUL 11 2006

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO. 1:06CR170-WHA |
| v. | ) | [21 U.S.C. §§ 846, 843(a)(6), |
| | ) | 856(a)(1) and 18 U.S.C. § 924(c)] |
| MICHAEL WAYNE CATRETT, | ) | |
| PAULA SERETHA CATRETT, | ) | |
| DALE ARNOLD WILLIAMS, | ) | |
| TRINITY AMANDA ROBERTS, | ) | |
| RENATA LYNN MYERS WALLACE, | ) | |
| LINDA SCHALLER CANTELLI, | ) | |
| AMY REDD LOLLEY LYNN WATSON, | ) | |
| and CAROL ANN MICHILES | ) | **INDICTMENT** |

The Grand Jury charges that:

COUNT 1

From in or about 2003 through on about the 31ˢᵗ day of May, 2006, in Coffee

County, within the Middle District of Alabama, the defendants,

MICHAEL WAYNE CATRETT,
PAULA SERETHA CATRETT,
DALE ARNOLD WILLIAMS,
TRINITY AMANDA ROBERTS,
RENATA LYNN MYERS WALLACE,
LINDA SCHALLER CANTELLI,
AMY REDD LOLLEY LYNN WATSON, and
CAROL ANN MICHILES,

did knowingly, intentionally, and unlawfully conspire and agree with each other and with

others both known and unknown to the Grand Jury to knowingly, intentionally, and

unlawfully manufacture, possess with the intent to distribute and distribute 50 grams or

more of a mixture and substance containing a detectable amount of methamphetamine,

a Schedule II Controlled Substance, in violation of Title 21, United States Code,

Sections 846 and 841(a)(1).

## COUNT 2

On or about the 31st day of May, 2006 in Coffee County, within the Middle District of Alabama, the defendants,

MICHAEL WAYNE CATRETT, and
PAULA SERETHA CATRETT,

did knowingly and intentionally possess a three-neck round-bottom flask, knowing, intending and having reasonable cause to believe that the three-neck round-bottom flask would be used to manufacture a controlled substance in violation of Title 21, United States Code, Section 843(a)(6).

## COUNT 3

From in or about 2003 until on or about the 31st day of May, 2006, in Coffee County, within the Middle District of Alabama, the defendants,

MICHAEL WAYNE CATRETT, and
PAULA SERETHA CATRETT,

did knowingly open, use and maintain a place for the purpose of manufacturing, distributing and using a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 856(a)(1).

## COUNT 4

On or about the 31st day of May, 2006, in Coffee County, within the Middle District of Alabama, the defendant,

PAULA SERETHA CATRETT,

did knowingly use and carry a Glock .45 caliber pistol, during and in relation to a drug

trafficking offense as charged in Count 1 herein, and did possess said firearm in

furtherance of, a drug trafficking offense charged in Count 1 herein, in violation of Title

18, United States Code, Section 924(c)(1)(A).

FORFEITURE ALLEGATION

A.    Counts 1 and 2 of this indictment are hereby repeated and incorporated

herein by reference.

B.    Upon conviction for any violation of Title 21, United States Code, Sections

841(a)(1) and/or 846 as alleged in Count 1; and/or Title 21, United States Code,

Section 843(a)(6) as alleged in Count 2 of this indictment, the defendants,

MICHAEL WAYNE CATRETT,<br>
PAULA SERETHA CATRETT,<br>
DALE ARNOLD WILLIAMS,<br>
TRINITY AMANDA ROBERTS,<br>
RENATA LYNN MYERS WALLACE,<br>
LINDA SCHALLER CANTELLI,<br>
AMY REDD LOLLEY LYNN WATSON, and<br>
CAROL ANN MICHILES,

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853 any

and all property constituting or derived from any proceeds the said defendants obtained

directly or indirectly as a result of the said violation and any and all property used or

intended to be used in any manner or part to commit and to facilitate the commission of the

violation alleged in Count 1 of this indictment.

C.    If any of the forfeitable property described in this

forfeiture allegation, as a result of any act or omission of the defendants:

1.    cannot be located upon the exercise of due diligence;

2.    has been transferred or sold to, or deposited with,

a third person;

3.    has been placed beyond the jurisdiction of the Court;

4.    has been substantially diminished in value; or,
5.    has been commingled with other property which

cannot be subdivided without difficulty; the United States, pursuant to Title 21, United

States Code, Section 853, intends to seek an order of this Court forfeiting any other

property of said defendants up to the value of the forfeitable property.

A TRUE BILL:

Janice Dnas Williams
Foreperson

John T. Harmon
Assistant United States Attorney

A. Clark Morris
Assistant United States Attorney

# Exhibit B

FILED

IN THE DISTRICT COURT OF THE UNITED STATES     AUG 1 5 2006
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL WAYNE CATRETT, | ) | CR. NO. _1:06-CR-170-WHA_ |
| PAULA SERETHA CATRETT, | ) | [21 U.S.C. §§ 846, 843(a)(6), |
| DALE ARNOLD WILLIAMS, | ) | 856(a)(1) and 18 U.S.C. § 924(c)] |
| TRINITY AMANDA ROBERTS, | ) | |
| RENATA LYNN MYERS WALLACE, | ) | |
| LINDA SCHALLER CANTELLI, | ) | |
| AMY LYNN REDD LOLLEY, | ) | |
| CAROL ANN MICHILES, and | ) | |
| ROY DALE WALLACE | ) | **SUPERSEDING INDICTMENT** |

The Grand Jury charges that:

## COUNT 1

From in or about 2003 through on about the 31st day of May, 2006, in Coffee

County, within the Middle District of Alabama, the defendants,

MICHAEL WAYNE CATRETT,
PAULA SERETHA CATRETT,
DALE ARNOLD WILLIAMS,
TRINITY AMANDA ROBERTS,
RENATA LYNN MYERS WALLACE,
LINDA SCHALLER CANTELLI,
AMY LYNN REDD LOLLEY,
CAROL ANN MICHILES, and
ROY DALE WALLACE,

did knowingly, intentionally, and unlawfully conspire and agree with each other and with

others both known and unknown to the Grand Jury to knowingly, intentionally, and

unlawfully manufacture, possess with the intent to distribute and distribute 50 grams or

more of a mixture and substance containing a detectable amount of methamphetamine,

a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

## COUNT 2

On or about the 31st day of May, 2006 in Coffee County, within the Middle District of Alabama, the defendants,

MICHAEL WAYNE CATRETT, and
PAULA SERETHA CATRETT,

did knowingly and intentionally possess a three-neck round-bottom flask, knowing, intending and having reasonable cause to believe that the three-neck round-bottom flask would be used to manufacture a controlled substance in violation of Title 21, United States Code, Section 843(a)(6).

## COUNT 3

From in or about 2003 until on or about the 31 st day of May, 2006, in Coffee County, within the Middle District of Alabama, the defendants,

MICHAEL WAYNE CATRETT, and
PAULA SERETHA CATRETT,

did knowingly open, use and maintain a place for the purpose of manufacturing, distributing and using a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 856(a)(1).

## COUNT 4

On or about the 31st day of May, 2006, in Coffee County, within the Middle District of Alabama, the defendant,

PAULA SERETHA CATRETT,

2

did knowingly use and carry a Glock .45 caliber pistol, during and in relation to a drug trafficking offense as charged in Count 1 herein, and did possess said firearm in furtherance of, a drug trafficking offense charged in Count 1 herein, in violation of Title 18, United States Code, Section 924(c)(1)(A).

## FORFEITURE ALLEGATION

A.    Counts 1 and 2 of this indictment are hereby repeated and incorporated herein by reference.

B.    Upon conviction for any violation of Title 21, United States Code, Sections 841(a)(1) and/or 846 as alleged in Count 1; and/or Title 21, United States Code, Section 843(a)(6) as alleged in Count 2 of this indictment, the defendants,

MICHAEL WAYNE CATRETT,
PAULA SERETHA CATRETT,
DALE ARNOLD WILLIAMS,
TRINITY AMANDA ROBERTS,
RENATA LYNN MYERS WALLACE,
LINDA SCHALLER CANTELLI,
AMY LYNN REDD LOLLEY,
CAROL ANN MICHILES, and
ROY DALE WALLACE,

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853 any and all property constituting or derived from any proceeds the said defendants obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Count 1 of this indictment.

C.    If any of the forfeitable property described in this forfeiture allegation, as a result of any act or omission of the defendants:

1.    cannot be located upon the exercise of due diligence;

3

2.    has been transferred or sold to, or deposited with, a third person;

3.    has been placed beyond the jurisdiction of the Court;

4.    has been substantially diminished in value; or,

5.    has been commingled with other property which

cannot be subdivided without difficulty; the United States, pursuant to Title 21, United

States Code, Section 853, intends to seek an order of this Court forfeiting any other

property of said defendants up to the value of the forfeitable property.

A TRUE BILL:

*Janice Davis Williams*
Foreperson

*Leura G. Canary*
LEURA G. CANARY
Assistant United States Attorney

*John T. Harmon*
John T. Harmon
Assistant United States Attorney

*A. Clark Morris*
A. Clark Morris
Assistant United States Attorney

4

Exhibit C

FILED

SEP - 7 2006

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL WAYNE CATRETT, | ) | CR. NO.  1:06-CR-170-WHA |
| PAULA SERETHA CATRETT, | ) | [21 U.S.C. §§ 846, 843(a)(6), |
| DALE ARNOLD WILLIAMS, | ) | 856(a)(1) and 18 U.S.C. § 924(c)] |
| TRINITY AMANDA ROBERTS, | ) | |
| RENATA LYNN MYERS WALLACE, | ) | |
| LINDA SCHALLER CANTELLI, | ) | |
| AMY LYNN REDD LOLLEY, | ) | |
| CAROL ANN MICHILES, | ) | **SECOND SUPERSEDING INDICTMENT** |
| ROY DALE WALLACE, | ) | |
| JESSICA LUMANAI BRUMAGHIM, and | ) | |
| SONYA MICHELLE PITTMAN | ) | |

The Grand Jury charges that:

COUNT 1

From in or about 2003 through on about the 31st day of May, 2006, in Coffee

County, within the Middle District of Alabama, the defendants,

MICHAEL WAYNE CATRETT,
PAULA SERETHA CATRETT,
DALE ARNOLD WILLIAMS,
TRINITY AMANDA ROBERTS,
RENATA LYNN MYERS WALLACE,
LINDA SCHALLER CANTELLI,
AMY LYNN REDD LOLLEY,
CAROL ANN MICHILES,
ROY DALE WALLACE,
JESSICA LUMANAI BRUMAGHIM, and
SONYA MICHELLE PITTMAN,

did knowingly, intentionally, and unlawfully conspire and agree with each other and with

others both known and unknown to the Grand Jury to knowingly, intentionally, and

unlawfully manufacture, possess with the intent to distribute and distribute 50 grams or

more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

### COUNT 2

On or about the 31st day of May, 2006 in Coffee County, within the Middle District of Alabama, the defendants,

MICHAEL WAYNE CATRETT, and
PAULA SERETHA CATRETT,

did knowingly and intentionally possess a three-neck round-bottom flask, knowing, intending and having reasonable cause to believe that the three-neck round-bottom flask would be used to manufacture a controlled substance in violation of Title 21, United States Code, Section 843(a)(6).

### COUNT 3

From in or about 2003 until on or about the 31 st day of May, 2006, in Coffee County, within the Middle District of Alabama, the defendants,

MICHAEL WAYNE CATRETT, and
PAULA SERETHA CATRETT,

did knowingly open, use and maintain a place for the purpose of manufacturing, distributing and using a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 856(a)(1).

### COUNT 4

On or about the 31st day of May, 2006, in Coffee County, within the Middle District of Alabama, the defendant,

2

PAULA SERETHA CATRETT,

did knowingly use and carry a Glock .45 caliber pistol, during and in relation to a drug

trafficking offense as charged in Count 1 herein, and did possess said firearm in

furtherance of, a drug trafficking offense charged in Count 1 herein, in violation of Title

18, United States Code, Section 924(c)(1)(A).

## FORFEITURE ALLEGATION

A.    Counts 1 and 2 of this indictment are hereby repeated and incorporated

herein by reference.

B.    Upon conviction for any violation of Title 21, United States Code, Sections

841(a)(1) and/or 846 as alleged in Count 1; and/or Title 21, United States Code,

Section 843(a)(6) as alleged in Count 2 of this indictment, the defendants,

MICHAEL WAYNE CATRETT,
PAULA SERETHA CATRETT,
DALE ARNOLD WILLIAMS,
TRINITY AMANDA ROBERTS,
RENATA LYNN MYERS WALLACE,
LINDA SCHALLER CANTELLI,
AMY LYNN REDD LOLLEY,
CAROL ANN MICHILES,
ROY DALE WALLACE,
JESSICA LUMANAI BRUMAGHIM, and
SONYA MICHELLE PITTMAN,

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853

any and all property constituting or derived from any proceeds the said defendants

obtained directly or indirectly as a result of the said violation and any and all property

used or intended to be used in any manner or part to commit and to facilitate the

commission of the violation alleged in Count 1 of this indictment.

3

C.    If any of the forfeitable property described in this forfeiture allegation, as a result of any act or omission of the defendants:

      1.    cannot be located upon the exercise of due diligence;

      2.    has been transferred or sold to, or deposited with, a third person;

      3.    has been placed beyond the jurisdiction of the Court;

      4.    has been substantially diminished in value; or,

      5.    has been commingled with other property which

cannot be subdivided without difficulty; the United States, pursuant to Title 21, United States Code, Section 853, intends to seek an order of this Court forfeiting any other property of said defendants up to the value of the forfeitable property.

A TRUE BILL:

_Janwes Davis Williams_
Foreperson

_Leura G. Canary_
LEURA G. CANARY
Assistant United States Attorney

_John T. Harmon_
John T. Harmon
Assistant United States Attorney

_A. Clark Morris_
A. Clark Morris
Assistant United States Attorney

4

# Exhibit D

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06-CR-170-WHA |
| | ) | |
| AMY LYNN REDD LOLLEY | ) | |

## PLEA AGREEMENT

DEFENSE COUNSEL:                    Pate Debardeleben

ASSISTANT U.S. ATTORNEY:        A. Clark Morris

## COUNT(S) PLEADING PURSUANT TO PLEA AGREEMENT:

Count 1:  21 U.S.C. § 846

Conspiracy to Manufacture, Possess with Intent to Distribute and Distribute a Controlled
Substance

## PENALTIES BY COUNT - MAXIMUM PENALTY:

Count 1: 21 U.S.C. § 846
(Conspiracy to Possess with the Intent to Distribute a Controlled Substance)

A term of imprisonment which may not be less than 5 years nor more than 40 years,
and fine not more than $2,000,000, or both fine and imprisonment; a term of supervised
release of not less than 4 years; and an assessment fee of $100.00.

## ELEMENTS OF THE OFFENSE(S):

Count 1:  21 U.S.C. § 846:

1.    That two or more persons in some way or manner, came to a mutual
      understanding to try to accomplish a common and unlawful plan, as charged in
      the indictment, to wit: to manufacture, possess with intent to distribute and
      distribute a controlled substance; and

1

2.    That the defendant, knowing the unlawful purpose of the plan, willfully joined in it.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A. Clark Morris, Assistant United States Attorney, and Pate Debardeleben, attorney for the defendant, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, have, with the authorization of the undersigned defendant, heretofore entered into discussions with a view towards reaching a pretrial conclusion of the charges pending in the Indictment herein and a Plea Agreement has been reached by said parties.

## GOVERNMENT'S PROVISIONS

1.   Upon entering a plea of guilty by the defendant to the offenses charged in the Indictment, the attorney for the Government will do the following:

a. Agree that a 2-level reduction in the applicable offense level pursuant to U.S.S.G. § 3E1.1(a) for the defendant's acceptance of responsibility is appropriate, so long as the defendant does not obstruct justice or otherwise fail to accept responsibility for the offense conduct.   Should the Government find the defendant assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and this Court to allocate their resources efficiently, the Government will move at sentencing for a further reduction of one-level, pursuant to U.S.S.G. § 3E1.1(b). Determination of whether the defendant met the defendant's obligations to qualify for the reduction pursuant to U.S.S.G. § 3E1.1 is at the sole discretion of the United States.

b. Should the defendant complete the defendant's obligations contained within the Cooperation Agreement as set forth herein, the Government will move at sentencing for a

2

downward departure pursuant to U.S.S.G. § 5K1.1 and Title 18, United States Code, Section 3553(e) to reflect the defendant's substantial assistance. In that motion, the Government will recommend a downward departure of at least four levels. Determination of whether the defendant has met the defendant's obligations to qualify for the reduction pursuant to U.S.S.G. § 5K1.1 and Title 18, United States Code, Section 3553(e) is at the sole discretion of the United States, and, at the sole discretion of the United States, the recommended departure may be more than the above-mentioned four levels if the defendant's substantial assistance reflects and/or merits such further departure.

      c.     Agree to recommend that the Defendant be sentenced at the low-end of the Sentencing Guideline range.

    2. The United States reserves the right to inform the Court and the Probation Office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background.

## DEFENDANT'S PROVISIONS

    3. The defendant agrees to the following:

      a.     To plead guilty to the Indictment.

      b.     Not to commit any other federal, state, or local offense while awaiting sentencing, whether that offense is charged or chargeable or not. Determination of whether Defendant's conduct is a violation of this provision is at the complete discretion of the Government.

      c.     While the defendant understands that the United States Sentencing Guidelines are advisory, the defendant agrees to be sentenced in accordance with the United

3

States Sentencing Guidelines.

      d.     To agree that facts that determine his offense level and sentence will be found by the Court at sentencing by a preponderance of the evidence and that the Court may consider any reliable evidence, including hearsay.

COOPERATION AGREEMENT

      e.  The defendant agrees to cooperate fully and testify truthfully against any and all persons as to whom the defendant may have knowledge at the grand jury, trial, or whenever called upon to do so. The defendant understands that this agreement requires the defendant to be truthful and to testify truthfully whenever called upon. The defendant agrees to be available for the review of documents and other materials and for interviews by law enforcement officers and attorneys for the Government upon reasonable request and to fully and truthfully respond to all questions asked of the defendant by law enforcement officers and attorneys for the Government.

      The defendant agrees to fully and truthfully disclose to the Government everything the defendant knows about any and all documents and materials in the defendant's possession that relate to the violations charged in this Indictment and any other criminal violations in the Middle District of Alabama and elsewhere. The defendant agrees, if desired by the Government, to travel with agents outside the Middle District of Alabama to identify others involved in Defendant's narcotics organization, locations and/or residences of others involved, or any other information related to others involved in this narcotics trafficking activity. The defendant agrees to submit to a polygraph examination conducted by the Government if requested to do so.

      Provided that the defendant satisfies the terms of this Plea Agreement, any information

4

that the defendant truthfully discloses to the Government during the course of the defendant's cooperation, concerning related offenses, will not be used against the defendant, directly or indirectly. The defendant understands that this agreement does not bar the defendant's prosecution for capital felonies, perjury, false statements, and/or obstruction of justice.

If the defendant has failed or should fail in any way to fulfill completely the defendant's obligations under this agreement, then the Government will be released from its commitment to honor all of its obligations to the defendant, without the defendant being allowed to withdraw the guilty plea. Thus, if at any time the defendant should knowingly and willfully withhold evidence from, or is found to have provided false information to, the Government investigators or attorneys prior to or during the defendant's testimony before grand juries or in trials, or fails to return to the Middle District of Alabama for any scheduled court appearance or any scheduled meeting with law enforcement agents in the Middle District of Alabama, then the Government will be free: (1) to prosecute the defendant for perjury, false declaration, false statement, and/or obstruction of justice (18 U.S.C. Sections 1621, 1623, 1001, 1503); (2) to prosecute the defendant for all violations of federal criminal law which the defendant has committed; (3) to use against the defendant in all of those prosecutions and sentencing the information and documents that the defendant has disclosed or furnished to the Government during the course of the defendant's cooperation; (4) to recommend a maximum sentence; and, (5) to seek forfeiture of any and all forfeitable properties of the defendant. The parties agree to submit to the court, to be decided by a preponderance of the evidence standard, the question of whether defendant has breached this agreement.

<u>FACTUAL BASIS</u>

5

4.  The defendant admits the allegations charged in the Indictment, and understands that the nature of the charge to which the plea is offered involves proof as to the charged offenses.  More specifically, the defendant admits the following:

From in or about 2003 through on about the 3rd day of May, 2006, in Coffee County, within the Middle District of Alabama, the defendants, MICHAEL WAYNE CATRETT, PAULA SERETHA CATRETT, DALE ARNOLD WILLIAMS, TRINITY AMANDA ROBERTS, RENATA LYNN MYERS WALLACE, LINDA SCHALLER CANTELLI, AMY LYNN REDD LOLLEY, CAROL ANN MICHILES, ROY DALE WALLACE, JESSICA LUMANAI BRUMAGHIM, and SONYA MICHELLE PITTMAN, did knowingly, intentionally, and unlawfully conspire and agree with each other and with others both known and unknown to the Grand Jury to knowingly, intentionally, and unlawfully manufacture, possess with the intent to distribute and distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

### DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

5.  Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence.  Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the grounds of ineffective assistance of counsel and prosecutorial misconduct.

In return for the above waiver by the defendant, the Government does not waive its right to appeal the sentence imposed in the instant case. The Government does not waive its right

6

to appeal any order dismissing the Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings. Further, the parties agree that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to 18 U.S.C. § 3742(b), the defendant is released from this waiver as to any issue the defendant may raise pursuant to 18 U.S.C. § 3742(a).

<u>DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT</u>

6. The defendant, before entering a plea of guilty to the Indictment, as provided for herein by said Plea Agreement, advises the Court that:

a. The discussions between the attorney for the Government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b. The defendant further understands that, pursuant to 18 U.S.C. § 3013, said $100.00 assessment fee is to be paid by the defendant on the date of sentencing and that, if a fine is imposed by the Court at sentencing, the defendant shall meet with a member of the Financial Litigation Section of the United States Attorney's Office on the day of sentencing and complete a written personal financial statement setting forth the defendant's assets and liabilities as of the date of the offense. The defendant will make an honest, good faith effort to pay said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's information, knowledge, and belief.

7

c. The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

d. The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

e. The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

f. The Defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the Government and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

8

g. The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

h. The defendant further understands that the Government can only make a recommendation, which is not binding upon the Court. However, if the Court does not accept the plea agreement, the Defendant would be permitted to withdraw the defendant's plea, if the defendant so chooses.

i. The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

j. The defendant understands that there is no possibility of a sentence of probation.

k. The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

7. The undersigned attorneys for the Government and for the defendant represent to the court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended. The attorney for the defendant further advises the

9

Court that the defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

8.    The defendant understands that the U.S. Probation Office will prepare a presentence investigation report for the Court. The Probation Officer will consider the defendant's conduct related to the offense to which the plea is offered, as well as the defendant's criminal history. The offense level or criminal history category, as calculated by the Probation Officer and determined by the court, may differ from that projected by defendant's counsel or the U.S. Attorney *January ACM Bo ARL*

This _4th_ day of _November_, 2006.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

A. CLARK MORRIS

10

Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: clark. morris@usdoj.gov
ASB-1613-N77A

for: _Clark Morris_

Louis V. Franklin, Sr.
Chief, Criminal Division

11

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL.

Amy Lynn Redd Lolley
Defendant

01-04-07
Date

Pate Debardeleben
Attorney for the Defendant

1-4-07
Date

12

Exhibit E

1                    IN THE UNITED STATES DISTRICT COURT
                                    FOR
2                     THE MIDDLE DISTRICT OF ALABAMA

3

4

5   THE UNITED STATES
        OF AMERICA
6
            vs.                            CRIMINAL ACTION NO.
7                                          1:06-CR-170-WHA
    AMY LYNN REDD LOLLEY
8

9

10

11

12

13

14

15                    CHANGE OF PLEA PROCEEDINGS

16

17

18                    * * * * * * * * * *

19

20

21
    BEFORE:          The Hon. Charles S. Coody
22
    HEARD AT:        Montgomery, Alabama
23
    HEARD ON:        January 4, 2007
24
    APPEARANCES:     A. Clark Morris, Esq.
25                   C. Pate DeBardeleben, Esq.

1    WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
     THE HON. CHARLES S. COODY ON JANUARY 4, 2007 AT THE
2    UNITED STATES COURTHOUSE IN MONTGOMERY, ALABAMA:

3

4              THE COURT:  The next matter is *United States*

5    *of America vs. Lolley*, two thousand six one seventy.

6              Miss Lolley, previously you have entered a

7    plea of not to the charge against you.  Is it now your

8    desire to change that plea?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  For that purpose you must be

11   placed under oath.  Please raise your right hand and be

12   sworn.

13             (Defendant sworn.)

14             THE COURT:  Miss Lolley, let me remind you now

15   that you are under oath, that if you answer falsely any

16   of the questions put to you during this proceeding,

17   either by the Court or the lawyers, those answers later

18   may be used against you in a prosecution for perjury or

19   for making a false statement.  Do you understand that?

20   A    Yes, sir.

21             THE COURT:  What is your full name.

22   A    Amy Lynn Redd Lolley.

23             THE COURT:  How old are you?

24   A    Thirty-nine.

25             THE COURT:  How far have you gone in school?

1    A    Graduated high school.

2          THE COURT:  All right.  Have you recently been

3    treated for any mental illness or addiction to narcotic

4    of any kind?

5    A    No, sir.

6          THE COURT:  Are you currently under the

7    influence of any drugs, medicine pills or alcoholic

8    beverage?

9    A    No, sir.

10          THE COURT:  Miss Lolley, you have the right to

11    have this proceeding conducted and your guilt

12    adjudicated based on your guilty plea by the next higher

13    ranking judge, a United States district judge.  I'm a

14    United States magistrate judge and you, however, may

15    consent to my conducting these proceedings.  Have you

16    and Mr. DeBardeleben talked about that?

17    A    Yes, sir.

18          THE COURT:  And do you wish to consent in my

19    conducting these proceedings?

20    A    Yes, sir.

21          THE COURT:  I therefore need you to sign the

22    form indicating your consent.

23          (Whereupon, the defendant executed said

24    document.)

25          THE COURT:  Miss Lolley, have you received a

1    copy of the indictment returned against you in this

2    case?

3    A    Yes, sir.

4          THE COURT:  Have you had an opportunity to

5    read the indictment and to discuss the charges against

6    with you Mr. DeBardeleben?

7    A    Yes, sir.

8          THE COURT:  Do you understand the charges

9    against you?

10   A    Yes, sir.

11         THE COURT:  Are you fully satisfied with Mr.

12   DeBardeleben's representation of you in this case?

13   A    Yes, sir.

14         THE COURT:  Miss Lolley, I have before me a

15   written plea agreement.  I'm turning to the last page of

16   that agreement, page twelve.  I'm showing you that page.

17   Look up here, Ms. Lolley.  That appears to be your

18   signature.  Is it?

19   A    Yes, sir.

20         THE COURT:  Before signing this plea agreement

21   did you have an opportunity to read it and to discuss

22   the terms of it with Mr. DeBardeleben?

23   A    Yes, sir.

24         THE COURT:  And do you understand the terms of

25   the plea agreement?

```
 1   A    Yes, sir.

 2             THE COURT:  Other than this plea agreement,

 3   has anyone made any promise to you to get you to plead

 4   guilty?

 5   A    No, sir.

 6             THE COURT:  Miss Lolley, this plea agreement

 7   contains a recommendation about a sentence to be imposed

 8   on you.  That recommendation is not binding on the

 9   Court.  At a later date the sentencing judge will review

10   this plea agreement and decide whether he will sentence

11   you in accordance with it.  If the sentencing judge

12   decides that he will not follow the plea agreement

13   you'll be notified of that, and at that time you will

14   have the right to withdraw your plea.  Do you understand

15   that?

16   A    Yes, sir.

17             THE COURT:  At that time if you decide to not

18   withdraw your plea the Court may then impose on you any

19   lawful sentence, even if it is more severe than the one

20   you expect.  Do you understand that?

21   A    Yes, sir.

22             THE COURT:  Has anyone attempted in any way to

23   force you to plead guilty in this case?

24   A    No, sir.

25             THE COURT:  Miss Lolley, I want to make
```

1    certain that you understand the consequences of entering

2    a guilty plea to the charge in count, one which is

3    conspiracy to manufacture, possess with intent to

4    distribute and to distribute a controlled substance, in

5    this instance methamphetamine.

6         First, that is a felony offense.  And upon

7    conviction of that offense you may be deprived of

8    valuable civil rights such as the right to vote, the

9    right to hold public office, the right to serve on a

10   jury and the right to possess any kind of firearm.  Do

11   you understand that?

12   A    Yes, sir.

13        THE COURT:  The maximum punishment for this

14   offense is a term of imprisonment of not less than five

15   nor more than forty years; a fine of not more than two

16   million dollars, or both the fine and the imprisonment.

17   Upon release from any improvement you'll be subject to a

18   period of supervised release of not less than four years

19   and you will be required to pay the Court an assessment

20   fee of one hundred dollars.  Do you understand that?

21   A    Yes, sir.

22        THE COURT:  Miss Lolley, if sentenced to a

23   term of imprisonment and later released and placed on

24   supervised release, should you violate the conditions of

25   supervised release you can be given additional time in

1    prison.  Do you understand that?

2    A    Yes, sir.

3            THE COURT:  Miss Lolley, have you and Mr.

4    DeBardeleben talked about the sentencing guidelines and

5    how they would apply to and affect your case?

6    A    Yes, sir.

7            THE COURT:  Even though those guidelines are

8    no longer mandatory on the Court, they remain an

9    important factor that the Court must and will consider

10   in imposing a sentence are you.  Do you understand that?

11   A    Yes, sir.

12           THE COURT:  If sentenced to a term of

13   imprisonment, you will not be released on parole because

14   parole has been abolished in the federal system.  Do you

15   understand that?

16   A    Yes, sir.

17           THE COURT:  Miss Lolley, under the terms of

18   this plea agreement you are giving up your right to

19   appeal any sentence imposed on you with certain

20   exceptions.  Those exceptions are ineffective assistance

21   of counsel, prosecutorial misconduct, or in the event

22   that the Government decides to appeal, you would then

23   have the right to appeal.  But other than those three

24   instances you will not have the right to appeal or

25   otherwise attack any sentence imposed on you.  Do you

1   understand that?

2   A    Yes, sir.

3              THE COURT:  Miss Lolley, to the charge against

4   you in count one, you have the right to plead not guilty

5   and to persist in that plea.  You would then have the

6   right to a trial by jury at which you would be presumed

7   innocent and the Government would be required to prove

8   your guilt beyond a reasonable doubt.  At that trial you

9   would have the right to the assistance of counsel for

10  your defense, the right to see and hear all witnesses

11  and have them cross examined in your defense.  You would

12  have the right on your own part to decline to testify

13  unless you voluntarily elected to do so in your defense.

14  And you would have the right to issue subpoenas to

15  compel witnesses to come to court to testify in your

16  defense.  Do you understand your right to a trial and

17  the other rights I've explained to you?

18  A    Yes, sir.

19             THE COURT:  At that trial if you decided to

20  not testify, or to not put on any evidence, those facts

21  could not be used against you.  Do you understand that?

22  A    Yes, sir.

23             THE COURT:  By pleading guilty to this charge

24  you are giving up your right to a trial and all of the

25  other rights that I've mentioned to you.  There will be

1    no trial of any kind, and based solely on your guilty

2    plea the Court will find you guilty and later impose

3    sentence on you.  Do you understand that?

4    A    Yes, sir.

5          THE COURT:  At a trial on this charge, the

6    Government would be required to prove beyond a

7    reasonable doubt that you and at least one other person

8    in some way or manner came to a mutual understanding to

9    try to accomplish a common and unlawful plan as set

10   forth in the indictment, here specifically the

11   manufacturer, possession with intent to distribute, and

12   the distribution of a controlled substance, and that

13   you, knowing the purpose of the plan, willfully joined

14   in it.  Do you understand what the Government would be

15   required to prove?

16   A    Yes, sir.

17         THE COURT:  Before I can accept your plea,

18   Miss Lolley, I must be satisfied that there is a factual

19   basis for it.

20         Who will assist the Court?

21         MS. MORRIS:  I will, Your Honor.

22         THE COURT:  Proceed.

23         MS. MORRIS:  Miss Lolley, during the period

24   from two thousand and three or during some period of

25   time between two thousand and three and the

```
 1    thirty-first, did you conspire with those mentioned in
 2    the agreement?
 3    A    Yes.
 4            MS. MORRIS:  During the course of this
 5    understanding, or as part of your agreement, did you
 6    agree to and go out and purchase pills of your arrest,
 7    did you conspire with those mentioned in the indictment,
 8    during the course of your understanding or as part of
 9    your agreement, did you agree and go out and purchase
10    the pills, those pills that you knew were going to be
11    used by you and others conspiring with those named in
12    the indictment to manufacture methamphetamine?
13    A    Yes, ma'am.
14            MS. MORRIS:  I believe that covers it, Your
15    Honor.
16            THE COURT:  Ms. Lolley, I told you the rights
17    that you have and the rights you give up by pleading
18    guilty to this charge, do you still desire to plead
19    guilty to count one, the conspiracy count?
20    A    Yes.
21            THE COURT:  To that charge, Ms. Lolley, how do
22    you plead?
23    A    Guilty.
24            MS. MORRIS:  One more thing, Your Honor.
25            Did all of this occur in Coffee County?
```

```
 1   A    Yes.

 2            MS. MORRIS:  I believe we'll stipulate that

 3   that's in the Middle District of Alabama.

 4            MR. DeBARDELEBEN:  Yes, Your Honor.

 5            MS. MORRIS:  I believe that covers it.

 6            THE COURT:  Do you agree?

 7            MR. DeBARDELEBEN:  Satisfied, Your Honor.

 8            THE COURT:  Miss Lolley, I have told you the

 9   rights you have and the rights that you give up by

10   pleading guilty to this charge.  Do you still desire to

11   plead guilty to count one, the conspiracy count?

12   A    Yes, sir, I do.

13            THE COURT:  To that charge how do you plead.

14   A    Guilty.

15            THE COURT:  Miss Lolley, the Court finds that

16   you are fully competent and capable of entering an

17   informed plea, that you are aware of the nature of the

18   charges and the consequences of your plea.  I further

19   find that your plea of guilty is a knowing and voluntary

20   plea, supported by an independent basis in fact

21   containing each of the essential elements of the

22   offense.  Your plea to count one is therefore accepted,

23   and you are now adjudged guilty of that offense.

24            The recommendation from pretrial is that

25   Miss Lolley continue on her release status.  What's the
```

1   position of the Government in this matter given the

2   nature of the charge?

3           MS. MORRIS:  Your Honor, the Government

4   concurs and I will state for the Court that I think it

5   would fall under the exceptional circumstances category

6   that Ms. Lolley is cooperating with the Government and

7   would aid the Government if she were to remain out.

8           THE COURT:  Miss Lolley, I'm going to order

9   that you released on the same conditions and bond

10  previously imposed on you pending sentence in this case.

11          Is there anything further?

12          MR. DeBARDELEBEN:  No.

13          THE COURT:  All right.  Thank you.  We'll be

14  in recess.

15          (Whereupon, the proceedings were concluded.)

16

17

18

19

20

21                    * * * * * * * * * *

22

23

24

25

1

2                    <u>COURT REPORTER'S CERTIFICATE</u>

3

4            I certify that the foregoing is a correct

5    transcript from the record of proceedings in the

6    above-entitled matter as prepared by me to the best of

7    my ability.

8

9            I further certify that I am not related to any

10   of the parties hereto, nor their counsel, and I have no

11   interest in the outcome of said cause.

12

13           Dated this 10th day of October 2007.

14

15                   /s/  Mitchell P. Reisner
                     <u>**MITCHELL  P.  REISNER,  CM, CRR,**</u>
16                   Official US Dist. Court Reporter
                     Registered Professional Reporter
17                   Certified  Real-Time  Reporter

18

19

20

21

22

23

24

25

**MITCHELL P. REISNER, CM, CRR - (334) 265-2500**
**Official U. S. District Court Reporter**
**TOTAL COMPUTERIZED LITIGATION SUPPORT & INSTANT TRANSLATION**

# Exhibit F

COPY    1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE MIDDLE DISTRICT OF ALABAMA

 3                     SOUTHERN DIVISION

 4

 5   UNITED STATES OF AMERICA

 6       vs.                    CASE NO.:  1:06cr170-WHA

 7   AMY LYNN REDD LOLLEY,

 8           Defendant.

 9

10

11

12                * * * * * * * * * * *

13                    SENTENCING HEARING

14                * * * * * * * * * * *

15        BEFORE THE HONORABLE W. HAROLD ALBRITTON, UNITED

16   STATES DISTRICT JUDGE, at Montgomery, Alabama, on Tuesday,

17   April 17, 2007, commencing at 11:02 a.m.

18   APPEARANCES:

19   FOR THE GOVERNMENT:      Ms. A. Clark Morris
                              Assistant United States Attorney
20                            OFFICE OF THE UNITED STATES ATTORNEY
                              131 Clayton Street
21                            Montgomery, Alabama  36104

22   FOR THE DEFENDANT:       Mr. C. Pate DeBardeleben
                              Attorney at Law
23                            2835 Zelda Road
                              Montgomery, Alabama  36104
24
                  Proceedings reported stenographically;
25                   transcript produced by computer.
```

2

1  (The following proceedings were heard before the Honorable

2  W. Harold Albritton, United States District Judge, at

3  Montgomery, Alabama, on Tuesday, April 17, 2007, commencing

4  at 11:02 a.m.:)

5  THE COURT: All right. I'll call the case of United

6  States of America versus Amy Lynn Redd Lolley. Is the

7  government ready to proceed?

8  MS. MORRIS: We are, Your Honor.

9  THE COURT: Is the defendant ready?

10  MR. DEBARDELEBEN: We are, Your Honor.

11  THE COURT: Hello, Mr. DeBardeleben.

12  MR. DEBARDELEBEN: Good morning.

13  THE COURT: Swear in the defendant, please.

14  (The defendant is sworn)

15  MR. DEBARDELEBEN: Your Honor, just -- I don't know

16  exactly when the time is right, so I'll go ahead and say it

17  now. We have some family and friends that would like to speak

18  on Amy's behalf to Your Honor at the proper juncture.

19  THE COURT: All right. Fine. Thank you.

20  Ms. Lolley, have you, and Mr. DeBardeleben, have you,

21  as defense counsel, reviewed the presentence report, including

22  any revisions that may have been made after the initial

23  disclosures?

24  THE DEFENDANT: Yes, we have.

25  THE COURT: And you have, Mr. DeBardeleben?

3

1  MR. DEBARDELEBEN: Yes, Your Honor.

2  THE COURT: The presentence report shows one objection

3  by the defendant. Do you maintain that objection?

4  MR. DEBARDELEBEN: We would love to maintain it, but

5  we're not going to. We have reviewed the law. We don't like

6  that; but like you heard before, we don't believe that we can

7  fight that. The law seems to be clear that she has to bear

8  those two points. So we hereby withdraw our objection on it.

9  THE COURT: All right. And I've reviewed the objection

10  and the cases and the law in regard to that, and you are

11  correct. So the objection is withdrawn and it's denied as

12  moot. As you correctly pointed out, it would have been denied

13  under the law if you had maintained it.

14  MR. DEBARDELEBEN: Yes, Your Honor.

15  THE COURT: Then there being no objection now to the

16  presentence report, the Court adopts the factual statements

17  contained in the presentence report. And also, I've considered

18  the government's motion for a third level of departure based on

19  acceptance of responsibility. I grant that motion. And

20  therefore, before considering the government's motion for

21  downward departure based on substantial assistance, I find that

22  the offense level is 21, the criminal history category is I, the

23  guideline range is from 37 months to 46 months, the supervised

24  release period is from three years to five years, and the fine

25  range is from $7,500 to $2 million. Do you agree with that,

4

1  Mr. DeBardeleben?

2  MR. DEBARDELEBEN: That is correct, Your Honor.

3  THE COURT: And Ms. Morris?

4  MS. MORRIS: Yes, sir.

5  THE COURT: All right. Now, the United States has

6  filed a motion for a further downward departure based on

7  substantial assistance, and I'll hear that motion at sidebar.

8  (Bench conference reported but not transcribed herein

9  pursuant to order of the Court)

10  THE COURT: I find that the motion for downward

11  departure based on substantial assistance under USSG, Section

12  5K1.1, should be granted, and it is hereby granted. Having

13  granted that motion, I find that the offense level should be

14  reduced to 17, which when combined with a criminal history

15  category of I, creates a guideline range of 24 months to 30

16  months and a fine range from $5,000 to $2 million.

17  I have received several letters on your behalf,

18  Ms. Lolley, and I've read each one of them very carefully and

19  considered them.

20  And I understand, Mr. DeBardeleben, that you have some

21  people who would like to speak.

22  MR. DEBARDELEBEN: Yes, sir. I would call --

23  THE COURT: I'll be happy to hear from them.

24  MR. DEBARDELEBEN: If now is the proper time, I'll

25  call --

5

1  THE COURT: You can just do -- let them come to the

2  lectern there, unless you want to examine them, Ms. Morris.

3  MS. MORRIS: No, Your Honor. The government doesn't

4  intend to examine them and has no objection to their just

5  proffering testimony from the lectern.

6  THE COURT: All right. They can just come to the

7  lectern.

8  MR. DEBARDELEBEN: All right. Y'all just come up here.

9  And I'll start with her father, Mr. Billy J. Redd. I think, if

10  I understood the Court, everybody that's going to speak, you

11  want to come on up and have a seat here. But Mr. Redd, I think

12  you're coming to the podium, please, sir.

13  Judge Albritton, this is Reverend Billy J. Redd.

14  THE COURT: All right. Reverend Redd. I know this is

15  very hard on you, Reverend Redd, so take your time. Go ahead.

16  (Brief pause)

17  THE COURT: I understand.

18  REV. REDD: I'll just pass.

19  THE COURT: If you want to come up later, I'll be glad

20  to hear you.

21  MR. DEBARDELEBEN: We would ask that the mother,

22  Mrs. Sue Redd, come up.

23  MRS. REDD: Good morning.

24  THE COURT: All right. Mrs. Redd.

25  MRS. REDD: We just want to tell you that we support

**6**

1  Amy.

2  THE COURT: All right.

3  MRS. REDD: We love her. And she celebrated a year

4  drug free on April the 6th, and we're real proud of her. And I

5  think she has a great future ahead of her. And she's very

6  respectful to her family. She's -- she, as you know, has three

7  daughters. And since all this started, she's -- she's stayed

8  with her dad and I. She doesn't go anywhere. And she's just

9  been a great daughter.

10  We know that she made a mistake. And at the time, we

11  were out of town. And if we would have been here, I don't think

12  that this would have happened. We were in Texas and -- those two

13  years. But whatever God sees fit, we will stand behind her and

14  always be there for her with a lot of respect, because this is

15  not Amy's normal way of doing anything that has been done in the

16  past. She's a better daughter now than she's ever been since

17  she was ten and 11 years old. So maybe it's all worked out for

18  the good.

19  And we appreciate your time and Mr. Pate's time and

20  Ms. Anna Clark Morris's time. And we thank you for any

21  consideration you could give her. Thank you.

22  THE COURT: Mrs. Redd, I know that this is extremely

23  difficult for you.

24  MRS. REDD: Yes.

25  THE COURT: And the majority of people I see before me

**7**

1  have no family support behind them.

2  MRS. REDD: Yes.

3  THE COURT: Your daughter is very fortunate to have the

4  support that she has with you and her father and others in the

5  community.

6  MRS. REDD: Thank you.

7  THE COURT: And as well as the spiritual help that she

8  has.

9  MRS. REDD: Yes.

10  THE COURT: So I appreciate everything you say, and I

11  sympathize with you under the circumstances as well. Thank you.

12  MRS. REDD: Thank you, Your Honor. Thank you.

13  MR. DEBARDELEBEN: Ms. Debitha --

14  THE DEFENDANT: Debitha.

15  MR. DEBARDELEBEN: Debitha Harrelson, a friend from

16  Elba.

17  THE COURT: Ms. Harrelson.

18  MS. HARRELSON: I have just known the Redd family for

19  several years. They're our pastor presently, and I've known Amy

20  for approximately 15 years. And even though she made some bad

21  choices, which she was not raised to do, in her selection of

22  friends, I've never seen anyone that had made a drastic turn and

23  done everything that she can do, Your Honor. She has gone for

24  treatment. She's in church. She works. She takes care of her

25  kids. And I've just never seen anyone more sincere in doing

**8**

1  what she can do. And I just ask that what you could do for her

2  or any leniency or anything, that you could have mercy on her.

3  We would appreciate it.    .

4  THE COURT: Thank you, ma'am.

5  MR. DEBARDELEBEN: Mike Bryant, a friend from Elba.

6  THE COURT: Mr. Bryant.

7  MR. BRYANT: Sir, I work at the Coffee County Jail, and

8  I've seen many a drug problems come in the jail, as well as I

9  seen Amy. And the transformation I've seen with Amy then until

10  today is unreal. She's a remarkable young lady. She works in

11  the church. She's a loving mother to her children. To her

12  mother and daddy, she's a loving daughter. And if you could

13  have just seen her back then compared to now, it would be

14  unbelievable. I would ask your condolence on her. She's a

15  wonderful person.

16  THE COURT: I know you would like to see more people

17  make that kind of turnaround.

18  MR. BRYANT: Yes, sir.

19  THE COURT: And unfortunately they do not.

20  MR. BRYANT: She has really turned around.

21  THE COURT: All right. Thank you very much.

22  MR. BRYANT: Yes, sir.

23  MR. DEBARDELEBEN: Ann Esterbrook, Amy's aunt.

24  THE COURT: Ms. Esterbrook.

25  MS. ESTERBROOK: Your Honor, thank you for hearing us.

**9**

1  Amy Lynn is -- is a very special person to me. We've always

2  been real close.

3  THE COURT: Ms. Esterbrook, would you pull that mike

4  over a little bit? Yes. I'm having a hard time hearing you.

5  MS. ESTERBROOK: Okay. I'm going to be like Verizon.

6  Can you hear me now?

7  THE COURT: I can hear you.

8  MS. ESTERBROOK: Thank you. Amy Lynn has just made a

9  tremendous change in her life. She seems to -- has a new course

10  for her life now. She's following that course. She's -- she's

11  been productive. She's tried to further herself. Her little

12  girls -- she has twin daughters. They're five years old. They

13  go to kindergarten. This is their first year, so you can

14  imagine little kindergarteners at five years old. And twins,

15  double trouble. When she comes in from -- when they come in

16  from school and Amy comes in from work, those little girls come

17  running up wanting to tell her everything. It's like she has

18  one ear tuned to Abbey and one ear over here for Allison. She

19  hears them both at the same time. I don't know how she does

20  it. She's a wonderful mother. She's a wonderful person inside.

21  The dedication that she has now is a deeper dedication

22  than from anyone I've ever seen. I'm a very stern person. I

23  was stern with my boys, and I don't give compliments easily.

24  I'm one who when I see it, I know it, and I believe it. Amy has

25  certainly made me a believer in her. I -- I do not -- I believe

10

1  she'll follow this path.  I have no doubt that she'll follow
2  this path.
3      I would ask, Judge, that she's given that opportunity,
4  that she has the opportunity to continue to be with those
5  children, that those children can continue to have the ability
6  to have her with them.  I pray for your leniency upon her.
7  Anything that you can do, Your Honor, that's within your power,
8  I ask that you do it.
9      THE COURT:  Ms. Esterbrook, your love and support will
10 mean a great deal to Ms. Lolley when all this is over.  She's
11 fortunate to have it.
12     MS. ESTERBROOK:  Thank you.  She's a wonderful person.
13     THE COURT:  Thank you.
14     MS. ESTERBROOK:  Thank you, Your Honor.
15     MR. DEBARDELEBEN:  Ms. Jan Fitch, Amy's aunt.
16     MS. FITCH:  Good morning.
17     THE COURT:  Good morning, Ms. Fitch.
18     MS. FITCH:  This is our girl.  When I realized Amy had
19 changed -- and she doesn't know this -- my son and I were
20 sitting in the Pizza Hut after having lunch.  And Sue, her
21 mother, walked in and walked over to the table and spoke.  And
22 Amy was -- at that time, I didn't even know it was Amy.  She had
23 changed so much.  She was smiling and happy then.  When she
24 walked off -- and I hate to tell you this -- but when she walked
25 off, I had to ask my son what that girl was.  She had changed so

11

1  much.
2      But she needs to be home with her children.  If you
3  could do that, find it in your heart, I would appreciate it.
4  She has changed.
5      THE COURT:  Thank you, ma'am.
6      MS. FITCH:  Thank you.
7      MR. DEBARDELEBEN:  Your Honor, this would conclude the
8  people.
9      THE COURT:  Ms. Lolley, you have a lot to live up to,
10 the expectations by these family members and your mother and
11 daddy and others.
12     Mr. DeBardeleben, is there anything you'd like to say
13 before I pronounce sentence?
14     MR. DEBARDELEBEN:  Your Honor, I don't know how I can
15 add to that.
16     THE COURT:  Ms. Lolley, is there anything you'd like to
17 say?
18     THE DEFENDANT:  Yes, I would.  I'd like to apologize to
19 my mom and dad.  I'm sorry for putting y'all through this.
20     I apologize to the courts for having to be in here.
21 And I feel like I've already been sentenced, the past four years
22 being away from my girls and my son.  I'm doing so much better.
23 I feel good.  And I appreciate you standing here listening to me
24 and everybody else.  Thank you.
25     THE COURT:  All right.  Ms. Morris, is there anything

12

1  you'd like to say?
2      MS. MORRIS:  Your Honor, the government would recommend
3  the low end of the guidelines in this case.  Ms. Lolley has,
4  what I would term, defied the odds in terms of the whole time
5  she's been out on bond being clean.  It has been a shock to me.
6  And as the Court sees, you know, as many of these users as I do,
7  I'm sure it's a shock to the Court.  It's just not very often
8  that someone with a serious methamphetamine addiction can
9  maintain, you know, staying away from methamphetamine without
10 some sort -- and I know that she has had family help and outside
11 help as well -- but still, the odds of her maintaining -- you
12 know, staying clean for this long are just astronomical.  So for
13 that reason, quite frankly, and because in order for her to get
14 back to her family, the government would recommend the low end
15 of the guidelines.
16     THE COURT:  All right.  I'm going to state the sentence
17 in a moment, but you'll have a final chance to make legal
18 objections before the sentence is imposed.
19     Ms. Lolley, for your benefit as well as for the benefit
20 of your parents and family and friends who are here, I want to
21 explain a little bit about what goes into setting of a sentence
22 in this case, because I have carefully considered all the
23 letters that have been written, the presentence report,
24 including all the circumstances of this offense, and everything
25 that was said this morning.

13

1      First, some of the letters have requested probation.  I
2  know that you know this from being advised by your attorney, but
3  the Congress of the United States passes laws setting sentences
4  and so forth in connection with crimes.  And for this one that
5  you have been convicted of and that you've pleaded guilty to,
6  Congress has strictly prohibited probation.  The language in
7  Section 841 of Title 21 of the United States Code tells us that
8  the Court shall not put any person convicted of this crime on
9  probation.  If I put you on probation, I'd be violating the law
10 just as you have.  Federal judges don't have any more authority
11 to violate the law than citizens do.  Probation is not a
12 possibility in this case.
13     THE DEFENDANT:  I understand.
14     THE COURT:  Now, in looking at what is an appropriate
15 sentence, we judges are directed to consider the *United States*
16 *Sentencing Guidelines*, which are advisory, but to give
17 consideration to those.  And the guideline level in this case is
18 24 months to 30 months in prison.  But we're also instructed by
19 law to consider other sentencing factors found in a place called
20 18, United States Code, Section 3553(a).  And I have considered
21 these factors.
22     The first factor that they tell us we must consider is
23 the nature and circumstances of the offense and the history and
24 characteristics of the defendant.  I've considered the history
25 and characteristics of the defendant; and the recent history,

14

1 certainly since having pleaded guilty to this, has been
2 remarkable. And it's something for you and your family and
3 friends to be proud of, that -- I agree with Ms. Morris. It's
4 unusual to see someone who has been addicted to methamphetamine
5 be able to turn it around like this. It's a terrible, terrible
6 drug. And it -- you know much better than I do personally what
7 it does to your body and your life. And it is remarkable to me
8 to hear that you've turned your life around like that. So I
9 have considered that.
10         I'm told to consider also the nature and circumstances
11 of the offense. In considering that, I note and have to take
12 into consideration that this was not simply a case of a person
13 using methamphetamine, but that for over a year you helped in
14 the manufacture of methamphetamine, methamphetamine which was
15 then sold to people all over I don't know where. And there are
16 people out there, many people, who have been personally affected
17 in their bodies by using that methamphetamine. And I'm sure
18 that there are people out there who have parents and friends who
19 have been hurt and children who have been hurt by your actions
20 in helping with the manufacture of methamphetamine.
21         We're instructed to, with a sentence, to reflect the
22 seriousness of the offense, to promote respect for the law, and
23 to provide just punishment for the offense. This is a very
24 serious offense which -- it's a violation of the law that must
25 be respected by other people.

15

1         We're told to consider what would afford adequate
2 deterrence to criminal conduct. A sentence needs to reflect
3 something that would keep other people from doing what you've
4 done.
5         We're told to consider protection of the public from
6 further crimes of the defendant. From all I've heard today, I
7 can't imagine that there's a problem with your committing
8 further crimes, Ms. Lolley, so I don't think that's something
9 that works against you. I hope I'm right.
10        THE DEFENDANT: You're right. Yes, sir.
11        THE COURT: We're told to provide the defendant with
12 needed educational and vocational training, medical care, or
13 other correctional treatment in the most effective manner. I'm
14 going to recommend that you be sent to an institution where
15 intensive drug treatment is available. It's a fine program in
16 the federal penal system. It's something that's available if
17 they make it available to you. As you may have heard me tell
18 some others this morning, it really depends on you. It's not
19 something they can force on you or make do anything, but it's
20 something that can be extremely helpful if you want it to be.
21 And from all I've heard, I'm confident that even though you've
22 made great strides up till now, that with this educational
23 program, you will be able to do even better when you get out.
24        And we're told to avoid unwarranted sentence
25 disparities among defendants. You're one of numerous people who

16

1 were involved in this situation, so that's another thing that I
2 must take into consideration.
3         And considering all of those things, it's my
4 determination that the minimum sentence under the advisory
5 guidelines is a reasonable sentence, 24 months, and that's what
6 I'm going to impose.
7         So having considered all those factors, it's the order,
8 judgment, and decree of the Court that the defendant is
9 committed to the custody of the Federal Bureau of Prisons to be
10 imprisoned for a term of 24 months. The Court recommends that
11 you be designated to a facility where intensive drug treatment
12 is available.
13        Upon release from imprisonment, you shall be placed on
14 supervised release for a term of five years. Within 72 hours of
15 release from custody, you shall report to the probation office
16 in the district to which you are released. While on supervised
17 release, you shall comply with the mandatory and standard
18 conditions of supervised release on file with the Court.
19        The Court also orders the following special
20 conditions. You shall participate in a program approved by the
21 United States Probation Office for substance abuse, which may
22 include testing to determine whether you have reverted to the
23 use of drugs. You shall contribute to the cost of any treatment
24 based on ability to pay and the availability of third-party
25 payments. You shall cooperate in the collection of DNA. You

17

1 shall submit to a search of your person, residence, office, or
2 vehicle pursuant to the search policy of this Court.
3         You shall pay to the U.S. District Court Clerk a
4 special assessment fee of $100, which is due immediately. Based
5 on your inability to pay, the Court waives the imposition of a
6 fine. The Court finds that there is no identifiable victim who
7 incurred a financial loss as a result of this offense.
8         I have to pause at this time to say that there is no
9 identifiable victim who has suffered a financial loss, although
10 there may be some who have. There are people in this court who
11 came up who are victims of what you've done, Ms. Lolley, and I
12 know that you recognize that. Your children are victims.
13 They're going to have to do without you, and that's no one's
14 fault but their mother's. And it's going to be up to your
15 family to look after them while you're away.
16        I know you understand all of these things. But I feel
17 that with the support you have when you get out and the support
18 you'll have while you're in prison, that you'll get through this
19 thing. And with that support and with the spiritual support
20 that I've heard that you have, you can do this. And you can
21 take advantage of drug treatment while you're in prison. I
22 would also tell you that there will be available various avenues
23 of spiritual help and that you can be a part of and help others
24 while you're in prison. And that's something that I believe you
25 might want to do.

18

1    Now, I understand that the government has agreed to a
2  self -- a voluntary surrender in this case. Ms. Morris, is that
3  because you wish -- you need to have her out to continue
4  rendering assistance?
5    MS. MORRIS: That is correct, Your Honor.
6    THE COURT: All right. I find that there are
7  exceptional circumstances. Without that and without the
8  agreement from the government, the law would require me to
9  detain you today.
10    Now, as to the date, I understand that there's a
11  graduation ceremony from kindergarten that's -- is that the 30th
12  or 31st?
13    THE DEFENDANT: We're not sure what day. It's one of
14  those.
15    THE COURT: I'd like to have a surrender date after May
16  31st. And I'll ask probation what would be an appropriate date.
17    PROBATION OFFICER: Your Honor, may I suggest the
18  following week, which would be Tuesday, June the 5th.
19    THE COURT: All right. Then you shall surrender to the
20  institution designated by the Federal Bureau of Prisons on or
21  before two o'clock p.m. on Tuesday, June 5th, 2007. In doing
22  that, I'm going to release you, Ms. Lolley, under the same terms
23  and conditions that were imposed by the United States magistrate
24  judge on July the 27th, 2006. Those are the conditions you've
25  been under up till today. You understand what those are?

19

1    THE DEFENDANT: Yes, sir.
2    THE COURT: I want to advise you that if you violated
3  any of those conditions, that you'd be brought in and sent to
4  prison right then. I also want to make sure you understand that
5  if you should fail to report to the institution that is
6  designated on or before two o'clock p.m. on June 5th, 2007, you
7  would have committed another federal offense for which you'd be
8  sent to prison for a longer period of time. You understand
9  that, don't you?
10    THE DEFENDANT: Yes, sir.
11    THE COURT: I want you to talk to the probation officer
12  before you leave today to make sure there's no misunderstanding
13  about any of those conditions.
14    THE DEFENDANT: Okay.
15    THE COURT: All right?
16    THE DEFENDANT: Yes, sir.
17    THE COURT: All right, then. The sentence is ordered
18  imposed -- first, are there any objections to the sentence or to
19  the manner in which the Court pronounced it? For example, do
20  you have any objections to the Court's ultimate findings of fact
21  or conclusions of law? Mr. DeBardeleben?
22    MR. DEBARDELEBEN: No, Your Honor.
23    THE COURT: Ms. Morris?
24    MS. MORRIS: No, sir.
25    THE COURT: The sentence is ordered imposed as stated.

20

1  I understand that under the plea agreement, the right of appeal
2  has been waived by the defendant; is that correct,
3  Mr. DeBardeleben?
4    MR. DEBARDELEBEN: That is correct, Your Honor.
5    THE COURT: The right of appeal has been waived. Then
6  Ms. Lolley, you are released on the terms and conditions of your
7  bond. Talk to the probation officer before you leave. I wish
8  you good luck.
9    THE DEFENDANT: Thank you.
10    THE COURT: I think you can do it. I believe you
11  will. Good luck to you.
12    THE DEFENDANT: Thank you.
13    THE COURT: You're excused, Mr. DeBardeleben. Thank
14  you for your service.
15    MR. DEBARDELEBEN: Thank you, Your Honor.
16    MS. MORRIS: Your Honor, that's all I have before the
17  Court. May I be excused?
18    THE COURT: You may.
19    MS. MORRIS: Thank you.
20    THE COURT: Court is adjourned.
21    (Proceedings concluded at 11:34 a.m.)
22         * * * * * * * * * * *
23
24
25

21

1         COURT REPORTER'S CERTIFICATE
2    I certify that the foregoing is a correct transcript
3  from the record of proceedings in the above-entitled matter.
4    This 20th day of September, 2007.
5
6         /s/ Risa L. Entrekin
          Registered Diplomate Reporter
7          Certified Realtime Reporter
          Official Court Reporter
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# Exhibit G

Supplement to Form 28 U.S.C. 2255
AMY LYNN REDD LOLLEY
Petitioner
Vs.
UNITED STATES OF AMERICA
Respondent
Civil Action No. 1:07cv648-WHA

The relief I seek through my motion is that the "gun enhancement " charge be removed from my record which affects my sentence and does not allow me to receive the twelve months reduction in my sentence after I complete the drug rehab course.

I respectfully request this relief because I did not have any involvement with the guns even though they were found on the property which was owned by the Catretts and the guns belonged to the Catretts. I am presently enrolled and attending the Drug Rehab Course at the Alderson Federal Prison Camp. I have been drug free since April of 2006 and have passed all the urine tests for drugs while waiting for the trial and sentencing. The Assistant Federal District Attorney, Mrs. Anna Clark-Morris, spoke on my behalf at the sentencing hearing before Judge William Albritton commenting on how she was pleased to hear and know that I had passed all the drug tests and requested that Judge Albritton give me the lowest sentence available. I am no threat to anyone and through the help of God I am totally drug free and will never use any drug again. I was working a regular job, raising my twin daughters and doing good while waiting for all the court proceedings. I have the offers of two jobs waiting for me when I get out of Alderson FPC.

Respectfully submitted, (8-2-07)

*Amy Lynn Redd Lolley*

Amy Lynn Redd Lolley